UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HASSEH EL-BEY,** <br><br> Plaintiff, <br><br> v. <br><br> **KENNETH MICHAEL MEAD,** *et al.*, <br><br> Defendants. | Case No. 1:21-cv-01184 (TNM) |

**MEMORANDUM OPINION**

According to the Complaint here, state and federal law enforcement officers stopped a truck belonging to Tribal Nations United Ministries (Tribal Nations), an alleged tribal organization. The officers seized the truck and interacted with a tribal marshal employed by Tribal Nations. About two weeks later, those officers again saw the marshal at another traffic stop of a Tribal Nations member. The officers ultimately arrested the marshal for reasons unexplained by the Complaint, and a Las Vegas court ordered him detained. The court upheld its detention order at a preliminary hearing about one month later.

Proceeding *pro se*, Hasseh El-Bey sued the main players in this saga, ostensibly on behalf of the detained marshal. The Defendants move to dismiss the Complaint on many grounds, most saliently because El-Bey lacks standing to assert the marshal's rights. The Court will grant those motions and dismiss the Complaint.

**I.**

The Court notes at the outset that El-Bey's Complaint is difficult to follow and decipher. He leaves out many factual details underlying his allegations, including anything about his role in the alleged incidents. More, he delineates certain names with two colons (e.g., :Heru: El-Bey)

and inserts random brackets into common words (e.g., "false [im]prisonment and [ex]cessive bail). *See* Compl. ¶¶ 9, 53.  And El-Bey fails to mention by name any statute, law or constitutional provision.  Instead, he continuously asserts violations of "due process of law" and "equal protection of law."  *See id.* ¶ 53.  Notwithstanding these infirmities and distractions, the Court seeks to identify the key incidents in his Complaint and to construe his allegations under the proper source of law.

El-Bey describes himself as "tribal chief" of Tribal Nations United Ministries, a group comprising tribal members who can trace their bloodlines "to the original native tribes" in America.  *Id.* ¶¶ 1, 4–5.  Tribal Nations employs tribal marshals, who "observe, record, report, protect, and serve [ ] tribal members, tribal property, and tribal affairs."  *Id.* ¶ 10.  Kristian-Reginald Craige is one of those marshals.[1]  *See id.* ¶ 9.

This case arises from events in Las Vegas.  According to the Complaint, three plainclothes law enforcement officers stopped a truck belonging to Tribal Nations.  *See id.* ¶ 12.  The Complaint does not say how Craige came to the scene, only that he arrived while wearing his tribal marshal uniform and identified himself to the officers.  *See id.* ¶¶ 16–18.  Despite Craige's efforts, the officers refused to give him the truck.  *See id.* ¶ 20.  Allegedly, the officers had no warrant for the stop.  *See id.*

About a fortnight later, the same officers stopped another Tribal Nations member at a shopping mall parking lot.  *See id.* ¶ 25.  One officer allegedly pointed his gun at the tribal member, who called Craige to the scene.  *See id.* ¶¶ 22, 24.  Craige wore his marshal's uniform and again identified himself to the officers.  *See id.* ¶¶ 26–27.  The Complaint does not describe

---

[1] According to records attached to the Complaint, Craige's original name was Reginald Vincent Craige.  *See* Compl., Ex. 1 at 2–3.  The Complaint says that Craige legally changed his first name to Kristian-Reginald. *See* Compl. ¶ 7.

what happened next, but two of the officers eventually arrested Craige, apparently without a warrant. *See id.* ¶ 30. Those two officers were Kenneth Mead and Scott Neilson, both of the Las Vegas Metropolitan Police Department (LVMPD). *See id.* ¶ 39. The third officer from the first traffic stop was later revealed to be Blake Vogt, an FBI agent. *See id.* ¶ 41. A state judge, Eric Goodman, set bond for Craige at $300,000 and detained him until payment of that amount. *See id.* ¶¶ 31, 48, 51.

A month after that, Craige appeared for a hearing at which Mead and Neilson testified. *See id.* ¶ 43. The Complaint provides few details about that hearing beyond allegations that Mead and Neilson falsely testified about Tribal Nations and its members. *See id.* ¶ 46. Craige also stated that "no evidence presented . . . violates his civil rights" and asked for release from jail on his own recognizance. *Id.* ¶¶ 49, 51. Judge Goodman refused. *See id.* ¶ 51. Craige remains incarcerated. *See id.* ¶ 37.

El-Bey then filed this Complaint. He alleges that Craige's "false imprisonment and excessive bail is [a] gross violation of due process of law and of Kristian-Reginal Craige's equal protection of law." *Id.* ¶ 53. El-Bey sues almost anyone who had any involvement in the case, including Mead, Neilson, Vogt, Judge Goodman, and prosecutor Eckley Keach. *See id.* ¶ 50.

In addition, El-Bey sues the relevant employers of those men, including LVMPD, the City of Las Vegas, Clark County, the district attorney's office, the State of Nevada, and the FBI. El-Bey alleges that those entities "are all agencies who must operate humane ways [sic] to preserve life and liberty," a duty that El-Bey says they failed to meet in Craige's case. *Id.* ¶ 52.

El-Bey also specifically alleges that Nevada, Clark County, and LVMPD acted without lawful authorization. *See id.* ¶ 45.[2]

El-Bey requests injunctive and monetary relief. He asks for the "immediate release" of Craige from prison and for an order that the Defendants cease "all wrongful trespass and violations of due process [ ] inflicted on" Craige. *Id.* ¶ 56. El-Bey also asks for "money damages against the defendants who orchestrated and neglected to prevent" the alleged violations of due process suffered by Craige. *Id.*

After filing his Complaint, El-Bey began to serve the Defendants. That process has been something of an ordeal. El-Bey first failed to serve all Defendants within the timeframe allowed under the Federal Rules of Civil Procedure. The Court granted him an extension of time to do so, warning that unserved Defendants could be dismissed from the case. *See* Minute Order, July 30, 2021. Although El-Bey used that extension to serve some Defendants,[3] he failed to properly

---

[2] Because all Defendants other than the FBI acted under color of state law and allegedly violated constitutional rights, the Court construes the Complaint as being brought under 42 U.S.C. § 1983.

[3] Some Defendants maintain that, even with the extension of time, El-Bey did not properly serve them. *See* LVMPD Defs.' Motion to Dismiss at 2, ECF No. 10-1; Clark Cnty. Defs.' Motion to Dismiss at 2, n.1, ECF No. 15. And the State of Nevada has never appeared despite El-Bey filing on the docket some returns of service that might signify proper service. *See* ECF No. 26. For purposes of this opinion, the Court assumes that El-Bey has properly served all remaining Defendants. For that reason, the Court will grant in part El-Bey's outstanding motion for judicial notice, *see* ECF No. 23, which asked the Court to take judicial notice that he had properly served certain Defendants. The Court will grant that motion as to service of process on Keach, Judge Goodman, and the State of Nevada, but not as to the FBI. Assuming proper service of process on those Defendants, however, does not prevent the Court from dismissing El-Bey's Complaint for lack of standing. *See Dominguez v. Dist. of Columbia*, 536 F. Supp. 2d 18, 23–25 (D.D.C. 2008).

serve Vogt or the FBI under Civil Rule 4(i).  The Court thus dismissed Vogt and the FBI from the case.  *See* Order, ECF No. 27; *see also* Order on Motion to Vacate, ECF No. 30.

Meanwhile, the other Defendants submitted motions to dismiss the Complaint.  *See* ECF Nos. 8, 10, 15.  El-Bey has responded.  *See* ECF Nos. 19, 20, 25.[4]  Those motions are now ripe.

## II.

The Defendants move to dismiss El-Bey's Complaint on various grounds, including under Rule 12(b)(1) for lack of standing.  Standing is essential throughout a case and, "as a jurisdictional matter, may be raised" sua sponte by the Court.  *Cicero v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017)*; see also Penkoski v. Bowser,* 486 F. Supp. 3d 219, 227 (D.D.C. 2020).

To satisfy his burden to prove standing, El-Bey must offer evidence showing that he has suffered an "injury in fact" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  This injury must be "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court."  *Id*. (cleaned up).  And, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id*. at 561 (cleaned up).

When ruling on a motion to dismiss under Rule 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).  And plaintiffs bear the burden to establish by a preponderance of the evidence that the Court has jurisdiction,

---

[4] In El-Bey's responses, he includes motions to strike for various reasons the Defendants' motions to dismiss.  None of those reasons is legitimate.  El-Bey's motions to strike will thus be denied.

5

including the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.  The Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Grand Lodge of Frat. Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).

El-Bey proceeds without counsel.  This triggers special solicitation for him.  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).  More, the Court must assess a pro se complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).  But pro se plaintiffs must still adequately plead their complaint consistent with the edicts of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).  *See Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).  The Court thus does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 678).

### III.

El-Bey's Complaint is noteworthy for what it does not allege.  At no point does El-Bey say that the Defendants deprived *him* of anything.  Instead, he asserts that the Defendants unlawfully seized the Tribal Nations truck, unlawfully arrested Craige, falsely imprisoned Craige, and detained him with excessive bail.  For simplicity of analysis, the Court will separate the challenge to the truck seizure from the other challenges about Craige.

## A.

In his challenges about Craige, El-Bey alleges that the Defendants violated only Craige's rights. That presents an immediate standing issue for El-Bey. A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). So El-Bey normally would be unable to assert violations of Craige's rights. Certain plaintiffs have standing, however, to protect a third party's rights when (1) the plaintiff has suffered an "injury in fact" sufficient to give him a "concrete interest" in the proceeding; (2) the plaintiff "has a close relationship" to the third party; and (3) there is "some hindrance to the third party's ability to protect his [ ] own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

El-Bey has met none of those requirements. *See Au-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23 (D.D.C. 2010) ("[T]he burden is on the plaintiff to establish that he has third party standing, not on the defendant to rebut third party standing." (cleaned up)). *First*, El-Bey never alleges that he has suffered any injury—all allegations center on injuries suffered by Craige. This alone justifies dismissal.

*Second*, even if El-Bey suffered an injury in fact, he does not have a sufficiently close relationship with Craige. To show that relationship, the "identity of interests" between Craige and El-Bey must be close enough to make El-Bey an "effective advocate" for Craige's interests. *Lepelletier v. FDIC*, 164 F.3d 37, 44 (D.C. Cir., 1999). The Court knows of no authority holding that a "tribal chief" has the necessary relationship to assert a member's rights, rather than those of the tribe itself. That is unsurprising—confidential or contractual relationships "have most often been found to support third party standing." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 361 (D.D.C. 2020).

One could argue that Craige as a tribal marshal has a contractual employment relationship, but even then, his contract would be with Tribal Nations, not with El-Bey. *See* Compl. ¶ 9 (noting that Craige works as tribal marshal "for Tribal Nations"). And although some courts have found a close relationship based on a plaintiff's supervisory authority over third parties, *see Turner*, 502 F. Supp. 3d at 361–62, the Complaint gives no details on El-Bey's alleged role as "tribal chief" and his responsibilities there, including the supervision of marshals.

*Third*, even if El-Bey can meet the first two requirements, he has not shown any "genuine obstacle" that prohibits Craige from protecting his own interests. *See Am. Immig. Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1362 (D.C. Cir. 2000) (quoting *Singleton v. Wulff*, 428 U.S. 106, 116 (1976)). Craige clearly knows his conditions of detention—none could argue that he is "likely unaware" of the alleged deprivations he has suffered. *Lepelletier*, 164 F.3d at 43. More, Craige has already shown the ability to challenge those conditions. He represented himself at his hearing before Judge Goodman and asked questions of various witnesses. *See* Compl. Ex. 1 at 11–22. Someone capable of self-representation in that adversarial arena can file his own complaint protesting his detention and the circumstances that put him there.[5] To be sure, filing a complaint from jail is not easy. But it is not impossible. And "normal burdens of litigation" do not present such a hindrance that Craige must rely on El-Bey to assert his rights. *Am. Immig. Lawyers Ass'n*, 199 F.3d at 1363–64. Nor is there any evidence that Craige requested El-Bey's help.

El-Bey therefore has not shown that he has standing to challenge the alleged violations of Craige's rights.

---

[5] Indeed, Craige apparently has hired counsel, *see* Compl. ¶ 37, further obviating the need for El-Bey's advocacy.

**B.**

El-Bey's standing to challenge the seizure of the truck likewise suffers from multiple flaws. For starters, the truck apparently does not belong to him. Documents attached to the Complaint show the truck as registered to Tribal Nations. *See* Compl. Ex. 1 at 4–5, ECF No. 1-1. Tribal Nations then should be the one to seek compensation for the seizure of its property. *See, e.g.*, *Common Cause v. FEC*, 108 F.3d 413, 416 (D.C. Cir. 1997) (stating that an organizational plaintiff may have standing to sue on its own behalf "to vindicate whatever rights and immunities the association itself may enjoy"). El-Bey therefore has not shown that he "himself suffered some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. at 499. He thus cannot invoke the Court's jurisdiction, his alleged leadership role in Tribal Nations notwithstanding.[6] *See Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) ("[T]he party seeking review must himself have suffered an injury.").

More, even if El-Bey could argue that he suffered a personal injury from Tribal Nations' alleged injury, his Complaint fails another element for standing. For a plaintiff to have standing, his alleged injury must be "likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Here, none of El-Bey's requested relief will lead to the truck's return or compensate for its alleged unlawful seizure. El-Bey requests relief only from alleged due process violations "inflicted on" Craige, including for Craige's immediate

---

[6] The Complaint provides little detail about the structure of Tribal Nations and whether, like federally recognized tribes, it has a defined group of leaders who can authorize a suit by Tribal Nations. *Cf. Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 938 (D.C. Cir. 2012). But even accepting his leadership, El-Bey still sues under his own name and thus must allege injuries against himself as "the complaining party." *Warth*, 422 U.S. at 499. True, a judgment in his favor might "collaterally" benefit the organization he leads, but that does not excuse him from the requirement that he must allege a personal injury from the truck seizure. *Id.* Whether he leads Tribal Nations is therefore irrelevant for standing purposes—he is the named plaintiff and must establish his own standing.

release from jail. Compl. ¶ 56. An order to release Craige from jail would not redress any alleged injury suffered by Tribal Nations over the seizure of the truck. Nor would money damages for the various alleged violations of Craige's due process rights compensate Tribal Nations for the seizure of the truck.

In sum, El-Bey requests relief only for Craige's alleged injuries. At no point does he request any relief to compensate or otherwise address Tribal Nations' injury from the truck seizure. He therefore has not established his standing to challenge that seizure.

### IV.

For these reasons, El-Bey's motion for judicial notice will be granted in part and the Defendants' Motions to Dismiss will be granted.[7] That dismissal will be with prejudice. The Court may dismiss a complaint with prejudice when any possible amendment of the complaint would not survive a motion to dismiss. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Carty v. Author Solutions, Inc.*, 789 F. Supp. 2d 131, 135–36 (D.D.C. 2011). Here, El-Bey could not amend his Complaint in any non-futile way. As discussed above, El-Bey is not even the proper plaintiff to sue. Tribal Nations would need to bring its own suit, which would require a new complaint, not merely an amended one. And even if El-Bey's amended Complaint alleged his own injuries, all the events "giving rise to the claim occurred" in Nevada. 28 U.S.C. § 1391(b). Venue would therefore be improper in this district anyway, and the Court would grant a renewed motion to dismiss on that basis. Thus, El-Bey cannot save his Complaint.

---

[7] Because the Court finds that El-Bey lacks standing under Rule 12(b)(1), it need not consider Defendants' various other justifications for dismissal. *See BYD Co. Ltd. v. All. For Am. Mfg.*, — F. Supp. 3d —, 2021 WL 3472386, at *4, n.3 (D.D.C. Aug. 6, 2021).

A separate order will issue.

Dated: October 26, 2021　　　　　　　　　　　　　　　TREVOR N. McFADDEN, U.S.D.J.